CLIFFORD K. LAWSON, JR.     )
    )
      v.                      )    Cause No. 3:07-CV-497 RM
    )   (arising out of 3:05-CR-137(01) RM)
UNITED STATES OF AMERICA    )

## OPINION AND ORDER

Clifford Lawson, Jr. pleaded guilty, without a plea agreement, to two counts of possession of a firearm as a felon in violation of 18 U.S.C. § 922(g)(1), and with one count of possession of an unregistered short-barreled (sawed-off) shotgun in violation of 26 U.S.C. §§ 5841, 5845, 5861(d) and 5871. The court sentenced Mr. Lawson to 46 months in prison, and the court of appeals affirmed Mr. Lawson's sentence. Mr. Lawson, now proceeding *pro se*, seeks relief pursuant to 28 U.S.C. § 2255. For the following reasons, the court denies Mr. Lawson's petition.

### BACKGROUND

Friends of Mr. Lawson — one man named Mr. Belinski and two men named Fry — called police because Mr. Lawson was acting distraught and was contemplating suicide. The government contends the callers also told police that Mr. Lawson had a weapon; Mr. Lawson disagrees. When the officers located Mr. Lawson on the road, they conducted a felony stop, but found no weapons. Mr. Lawson agreed to go to Madison Center for evaluation.

The government contends that before going to Madison Center, Mr. Lawson agreed to let Mr. Belinksi take his firearms from his residence for safekeeping. Mr. Lawson argues that he didn't know of or consent to any search of his residence. Mr. Belinski, who had a key to the residence (which Mr. Lawson says was "for emergency only"), accompanied police to Mr. Lawson's residence, where the officers seized a double-barreled shotgun, a .22 caliber rifle, a short-barreled shotgun, and ammunition. In a later search of the residence, officers also found a disassembled .22 caliber rifle. Mr. Lawson disputes the government's contention that Mr. Lawson later called Scott Fry and made threats in an attempt to get his guns back.

Mr. Lawson knowingly possessed the firearms found at his residence. Over a span of several years, Mr. Lawson gave his mother the guns because he couldn't possess them legally as a result of his prior felony conviction in 1994. Mr. Lawson's mother would return the guns from time to time, leaving them at his doorstop.

A grand jury returned an indictment against Mr. Lawson for two counts of possession of a firearm as a felon and one count of possession of an unregistered short-barreled shotgun. The court appointed Robert D. Truitt to represent Mr. Lawson. On the day before trial was scheduled to begin, Mr. Lawson pleaded guilty to all three counts of the indictment.

At the change of plea hearing, Mr. Lawson testified that he was 51 years old, had graduated from high school, grew up speaking English, wasn't under the care of a doctor or psychiatrist, had never been treated for mental illness or

narcotics addition, and hadn't taken any medication, drugs, pills, or alcohol in the 24 hours before his plea hearing. Mr. Lawson testified that he had discussed the indictment with Mr. Truitt and was satisfied with the job Mr. Truitt had done. After the government recited the essential elements of the three charged offenses, Mr. Lawson reaffirmed that he believed he was guilty. Through questions by Mr. Truitt, Mr. Lawson admitted that he had previously been convicted of a felony and knowingly possessed a shotgun, two .22 caliber rifles (one disassembled), and a short-barreled shotgun at his home; he didn't dispute that the guns had crossed state lines. Although Mr. Lawson said he was unsure of the length of the short-barreled shotgun, he testified that he knew it had a modified stock, was shorter than a normal shotgun, and appeared to be less than 24 inches long. He also testified that he never registered that gun with the government.

Following the factual basis, Mr. Lawson acknowledged that he understood the possible penalties for the offense and the manner in which the sentence would be determined, that he had discussed the sentencing guidelines with his counsel, and that no additional promises or predictions had been made to him. Mr. Lawson acknowledged that by pleading guilty he was giving up his right to a trial by jury; to confront and subpoena witnesses; to testify or invoke his right not to testify; to be presumed innocent; and if he was convicted, the right to appeal the conviction.

After the plea hearing, but before his sentencing, Mr. Lawson submitted two letters, saying that he only pleaded guilty for his mother's sake, that he

told Mr. Truitt in advance that he did not want to go trial, noting discrepancies or inaccuracies in the government's account of the case, alleging violations of his Fourth Amendment rights, and informing the court of a drug operation that he wanted to use to offset or eliminate his charges. Mr. Lawson explained that he provided all of this information to Mr. Truitt, but Mr. Truitt didn't relay the information to the court or the government.

In one of the letters, Mr. Lawson disputed a government witness's statement that he gave the short-barreled shotgun to Mr. Lawson in an unaltered state. Mr. Lawson said that someone surreptitiously switched the stock of his short-barrel shotgun — a family heirloom — with the one actually found at his residence. Mr. Lawson named witnesses he claims could verify this information and said he gave Mr. Truitt their names, but Mr. Truitt did nothing to find them.

At the sentencing hearing, the parties addressed the letters and discussed whether Mr. Lawson still was entitled to a reduction of sentence for his previous acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). The court determined that despite the issues raised in his letters, because Mr. Lawson didn't deny possession of the short-barreled shotgun or guilt of the essential elements of the charged offenses, he still was entitled to receive the reduction in his offense level.

The court sentenced Mr. Lawson to 46 months in prison. After sentencing, Mr. Lawson timely filed a notice of appeal on the reasonableness of

his sentence. The court of appeals affirmed Mr. Lawson's sentence. <u>See</u> <u>United States v. Lawson</u>, 2006 WL 3697288 (7th Cir. 2006). Mr. Truitt also represented Lawson on appeal.

Mr. Lawson, acting *pro se,* filed this motion, raising 14 separate grounds for relief. Mr. Lawson alleges that he received ineffective assistance of counsel, specifying inadequate representation of counsel, derelict of duties to his client, omission of facts and evidence, and refusal to challenge violations of Mr. Lawson's fourth amendment rights. (Ground 1). Mr. Lawson also contends that he gave Mr. Truitt "all evidence," but Mr. Truitt refused to relay the information to the court. (Ground 1). After submitting his motion, Mr. Lawson filed another letter with the court explaining that he informed Mr. Truitt of certain evidence that Mr. Truitt did not relay.

Mr. Lawson also alleges that his Fourth Amendment rights were violated based on the felony stop (Ground 2), the two searches of his residence (Grounds 3, 13, 14), and the retention of firearms from his residence (Ground 4). Mr. Lawson objected to certain statements that he contends the court made: that Mr. Lawson was confused during the felony stop and that Mr. Lawson would receive better health care in prison. Mr. Lawson also objects to the court's participation in this case and questions whether the court was attempting to "cover-up police misconduct." (Ground 5).

Mr. Lawson makes various arguments about the evidence in the case, including the purpose for which he possessed the .22 caliber ammunition

(Ground 6); the circumstances under which his mother and wife transported the guns to and from his residence while he was incarcerated from 1994 through 1997 (Ground 8); certain erroneous statements by Mr. Belinski and Mr. Fry (Ground 9); a missing taxicab receipt provided to his state public defender which Mr. Lawson claims in a letter would establish that he didn't make a threatening phone call to Mr. Fry (Ground 10); the circumstances under which an unknown party attempted to move into Mr. Lawson's residence after his arrest (Ground 11); and circumstances to establish that Mr. Lawson didn't acquire the short-barreled shotgun from Mr. Pierce (Ground 12). Mr. Lawson also maintains that his rights were restored based upon the restoration of his voting rights in July 2000 (Ground 7).

The government responds that Mr. Lawson's unconditional guilty plea resulted in a waiver of his arguments, or alternatively, if the petition could be construed as challenging the plea's voluntariness, that Mr. Lawson provided insufficient detail or allegations in his petition to prevail. Mr. Lawson filed no reply.

ANALYSIS

Relief under § 2255 is reserved for extraordinary situations. <u>Prewitt v. United States</u>, 83 F.3d 812, 816 (7th Cir. 1996). "Relief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice." <u>Kelly v. United States</u>, 29 F.3d 1107, 1112

(7th Cir. 1994), overruled on other grounds, <u>United States v. Ceballos</u>, 302 F.3d 679 (7th Cir. 2002). A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Because the motion and files and records in this case conclusively demonstrate that Mr. Lawson is not entitled to relief, the court decides this matter without an evidentiary hearing.

When an unconditional guilty plea is both counseled and voluntary, the resulting conviction generally may not be collaterally attacked. <u>United States v. Broce</u>, 488 U.S. 563, 569 (1989). "[A]n unconditional guilty plea generally 'waives all nonjurisdictional defects in the proceeding,' including Fourth Amendment claims." <u>See</u> <u>United States v. Markling</u>, 7 F.3d 1309, 1312 (7th Cir. 1993) (citing 1 Charles Alan Wright, *Federal Practice and Procedure*, § 175 at 624 (1982)); <u>United States v. Rogers</u>, 387 F.3d 925, 932-933 (7th Cir. 2004) (explaining that a guilty plea "operates as a waiver of all non-jurisdictional defects" before the plea). There are exceptions for jurisdictional defects, and a defendant may challenge his guilty plea on the ground that it was unknowing or involuntary. For example, a defendant may claim that ineffective assistance of counsel made the guilty plea unknowing or involuntary. <u>See</u>, <u>United States v. Broce</u>, 488 U.S. at 569, 574. Otherwise, to preserve pretrial issues for review, a defendant must enter into a conditional guilty plea pursuant to Federal Rule of Criminal Procedure 11(a)(2), precisely identifying the pretrial

issues the defendant wishes to preserve for review and demonstrating that a decision on one of those issues will dispose of the case. <u>United States v. Rogers</u>, 387 F.3d at 934.

Mr. Lawson advances four main arguments in support of his petition for relief: violation of his Fourth Amendment rights based on illegal felony stop, search of his car and residence and seizure of his guns; various arguments about the evidence in this case; objections to statements made by this court and the court's participation in this case; and ineffective assistance of counsel.[1]

Mr. Lawson waived his right to raise violations of his Fourth Amendment rights, argue the facts and evidence in this case, and object to the court's statements and participation in the case on collateral review when he entered into his unconditional guilty plea. See <u>United States v. Broce</u>, 488 U.S. at 569; <u>United States v. Silvious</u>, 512 F.3d 364, 372 (7th Cir. 2008) (finding that after entering into a guilty plea the defendant waived his argument that FBI agents conducted an illegal search and seizure of his property). There is no suggestion in the record indicating that Mr. Lawson intended to enter into a conditional guilty plea, nor does Mr. Lawson contend that his plea was uncounseled or

---

[1]Mr. Lawson also asserts in Ground 7 that his voting rights were restored. Since Mr. Lawson doesn't appear to be seeking relief in Ground 7, this court does not address that claim. In Ground 11, Mr. Lawson contends that a third party tried to move into his house after his arrest and steal personal items. Since these assertions do not appear to be related to Mr. Lawson's guilty plea, conviction or sentence, the court declines to address this claim.

involuntary. Because Mr. Lawson knowingly and voluntarily entered into his guilty plea and didn't preserve such issues for review, he has waived them.

The court in <u>Rogers</u> explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . .

<u>United States v. Rogers</u>, 387 F.3d at 933 (citing <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973)). Mr. Lawson doesn't assert that he was coerced into pleading guilty, or try to show that his plea was involuntary,[2] or suggest any misapprehension on his part that issues relating to the evidence in this case would survive the plea. <u>See</u> <u>United States v. Rogers</u>, 387 F.3d at 933. Instead, Mr. Lawson chose to enter into an unconditional guilty plea and obtain a reduction in offense level for his acceptance of responsibility.

During the change of plea hearing, this court asked Mr. Lawson a series of questions relating to his competency, the voluntariness of his plea, the elements and facts needed to be proven by the government to convict him, and the consequences of entering into the guilty plea. After the government recited the essential elements of the charged offenses, Mr Lawson said he believed he was guilty and admitted the essential facts resulting in his conviction. Mr.

---

[2] To the extent Mr. Lawson claims his plea was involuntary due to ineffective assistance of counsel, that contention is addressed later.

Lawson said no additional promises had been made to him and acknowledged that by pleading guilty he was giving up his right to a trial by jury; to confront and subpoena witnesses; to testify or invoke his right not to testify; to be presumed innocent; and if he was convicted, the right to appeal the conviction. Mr. Lawson was aware that he was waiving his right to a trial and all rights that accompany a trial. These representations by Mr. Lawson are presumed truthful. United States v. Loutos, 383 F.3d 615, 619 (7th Cir. 2004) (explaining the purpose of Rule 11 colloquy).

Although Mr. Lawson raised several issues between his plea and sentencing by his two letters to the court, Mr. Lawson didn't request or indicate that he wanted to withdraw his guilty plea or enter a conditional plea. After the unconditional plea, the government agreed not to seek a sentence above the low end of the guideline range, a decision that might not have ensued had Mr. Lawson insisted on a conditional plea. Mr. Lawson waived his right to collaterally attack these non-jurisdictional issues.

Mr. Lawson may raise an ineffective assistance of trial counsel claim for the first time on postconviction review. See Barker v. United States, 7 F.3d 629, 632 (7th Cir. 1993) ("The denial of a defendant's Sixth Amendment right to effective assistance of counsel can excuse procedural default."). To make a claim of ineffective assistance of counsel, Mr. Lawson must show that Mr. Truitt's performance was objectively deficient, and that the deficient representation caused prejudice to Mr. Lawson. Galbraith v. United States, 313

F.3d 1001, 1008 (7th Cir. 2002) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984)); <u>Hill v. Lockhart</u>, 474 U.S. 52, 57 (1985) (stating that the same two-part test set out in <u>Strickland</u> applies to challenges of guilty pleas based upon ineffective assistance of counsel). A failure to establish either prong results in a denial of the ineffective assistance of counsel claim. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. at 57.

The plaintiff must establish specific acts or omissions of his counsel that constitute ineffective assistance. The court must decide whether those acts or omissions "fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." <u>See</u> <u>Barker v. United States</u>, 7 F.3d at 633 (7th Cir. 1993) (citing <u>Strickland v. Washington</u>, 466 U.S. at 669). The court's scrutiny of counsel's performance is highly deferential. <u>See</u> <u>Coleman v. United States</u>, 318 F.3d 754, 758 (7th Cir. 2003). In the context of a guilty plea, "a reasonably competent lawyer will attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty." <u>Bethel v. United States</u>, 458 F.3d 711, 717 (7th Cir. 2006).

Prejudice in the context of a guilty plea requires a showing that there existed a reasonable probability that, but for counsel's errors, Mr. Lawson would not have pleaded guilty and would have insisted on going to trial. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. at 59; <u>see</u> <u>also</u> <u>Bethel v. United States</u>, 458 F.3d at 716. "[T]he key to whether defense counsel has failed to provide effective

assistance is whether his shortcomings resulted in an involuntary or unintelligent plea." Santos v. Kolb, 880 F.2d 941, 944 (7th Cir. 1989). To prove that he was prejudiced, Mr. Lawson must show that Mr. Truitt's deficiency was a decisive factor in his decision to plead guilty. Bethel v. United States, 458 F.3d at 719. Mr. Lawson's allegations can't establish that Mr. Truitt's allegedly deficient assistance prejudiced him. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland v. Washington, 466 U.S. at 697. Because Mr. Lawson doesn't contend that he unknowingly or involuntarily entered into his guilty plea or that he wouldn't have pleaded guilty had he been given different advice from Mr. Truitt, he is unable to establish prejudice. See Santos v. Kolb, 880 F.2d at 944 (citing Key v. United States, 806 F.2d 133, 138-139 (7th Cir.1986) ("A specific explanation of why the defendant alleges he would have gone to trial is required."); see also United States v. Cieslowski, 410 F.3d 353, 359 (7th Cir. 2005) (Even "a mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice[;] . . . the defendant must go further and present objective evidence that a reasonable probability exists that he would have taken that step.") (citations omitted)

As already discussed, nothing in the record indicates that Mr. Lawson didn't enter his plea knowingly and voluntarily, and he didn't ask to withdraw his plea. Mr. Lawson points to no poor advice from Mr. Truitt about his plea's

consequences, a trial's likely outcome, the possible penalties, or any other matter touching upon his guilty plea. Nothing in the record indicates that Mr. Lawson wasn't free to exercise his right to challenge the sufficiency of the government's evidence at trial; Mr. Lawson instead voluntarily chose to enter a plea of guilty, receive a reduction in offense level for his acceptance of responsibility, and obtain cooperation from the government in not seeking a sentence above the low end of the guideline range.

Although Mr. Lawson makes various allegations in support of his ineffective assistance of counsel claim, he provides no details of Mr. Truitt's ineffectiveness in the negotiation, entry or understanding of the guilty plea. Nothing in the record suggests that but for Mr. Truitt's deficient performance or advice, there is a reasonable probability that Mr. Lawson would have sought a motion to suppress or insisted on taking his chances with a jury instead of accepting the benefits of a plea. See Galbraith v. United States, 313 F.3d at 1010 (stating that a sworn affidavit with proof of the conduct alleged was required as a predicate to securing an evidentiary hearing.).

Mr. Lawson makes four general contentions of ineffective assistance of counsel: Mr. Truitt provided inadequate representation, was derelict of duties to his client, omitted facts and evidence and refused to challenge violations of Mr. Lawson's Fourth Amendment rights. Mr. Lawson identifies no specific acts or omissions supporting his claim that Mr. Truitt provided inadequate representation or was derelict of his duties, so his § 2255 motion cannot

succeed on those grounds. <u>See</u> <u>Coleman v. United States</u>, 318 F.3d at 758 (stating that to overcome the presumption that an attorney's performance is effective, the plaintiff must establish specific acts or omissions of his counsel which constitute ineffective assistance).

Additionally, Mr. Lawson's claim that Mr. Truitt refused to provide the court with certain facts and evidence doesn't entitle Mr. Lawson to relief. Mr. Lawson doesn't say when such facts and evidence should have been disclosed or how disclosing such facts would have changed his decision to plead guilty. The evidence that Mr. Lawson believes should have been disclosed does not go to the essential elements of the charged offenses and so isn't relevant to Mr. Lawson's guilt.

Mr. Lawson does not dispute the conduct that matters: that he had previously been convicted of a felony and knowingly possessed a shotgun and two .22 caliber rifles (one was disassembled); that the guns had crossed state lines; that he knowingly possessed a short-barreled shotgun; that he was aware it had a modified stock, was shorter than a normal shotgun, and appeared to be less than 24 inches long; and that he never filed a notice with the government regarding that firearm. Even though Mr. Lawson alleges he didn't own the short-barreled shotgun (according to Mr. Lawson, someone surreptitiously switched the stock of his short-barreled shotgun with theirs), the relevant statutory sections require only that Mr. Lawson knowingly possess such a firearm without proper registration. 26 U.S.C. §§ 5845, 5861

Accordingly, Mr. Truitt was not deficient in failing to raise the evidence and facts Mr. Lawson notes in his petition.

Mr. Lawson cannot establish prejudice to the extent he claims Mr. Truitt was deficient in failing to raise certain facts or evidence in objection to the pre-sentence report or during the sentencing hearing. To establish ineffective assistance of counsel at the sentencing stage, Mr. Lawson must demonstrate that his attorney performed in a deficient manner at the hearing, and then provide that but for counsel's action or inaction there is a reasonable probability that he would have received a more favorable sentence. See Fuller v. United States, 398 F.3d 644, 650 (7th Cir. 2005) (citations omitted). Mr. Lawson appears to assert that Mr. Truitt should have obtained and provided evidence that Mr. Lawson didn't threaten friends or police, that he didn't own the short-barreled shotgun,[3] that the .22 ammunition found in his home was used in a nail gun for home remodeling purposes, and that he didn't possess the guns any time from January 1994 through July 1997 while he was incarcerated. Nothing in the record suggests that Mr. Lawson's sentence would have been shorter had Mr. Truitt presented evidence of these facts at the sentencing hearing, so Mr. Lawson cannot maintain his claim on this ground.

---

[3]Mr. Lawson actually raised these issues in two letters that he filed with the court before sentencing, and again raised the arguments during the sentencing hearing. The court considered these arguments when sentencing Mr. Lawson.

These facts weren't relevant in determining the advisory guideline range of 46 to 57 months' imprisonment. Sentencing courts are to use the guideline range as the starting point and the initial benchmark, but may not presume that the recommended range is reasonable. <u>Gall v. United States</u>, 128 S. Ct. 586, 590 (2007). The court determines a reasonable sentence by looking to 18 U.S.C. § 3553(a). <u>Gall v. United States</u>, 128 S. Ct. at 590. "[D]ue process require sentencing courts to calculate the defendant's guidelines range and to provide the defendant an opportunity to request a sentence different from the one recommended under the Guideline." <u>United States v. Martinez-Martinez</u>, 442 F.3d 539, 543 (7th Cir. 2006). After considering the § 3553(a) factors, the court should "articulate those factors relevant to the sentence that it decides to impose." <u>United States v. Martinez</u>, 442 F.3d at 543.

Mr. Truitt advanced several arguments for a sentence below the range: that Mr. Lawson was his mother's caretaker; that Mr. Lawson posed a lower likelihood of recidivism based on his age, lack of criminal history and family obligations; that Mr. Lawson's criminal history category significantly overstated the dangerousness of Mr. Lawson's criminal conduct to the community; and that the guidelines overstated Mr. Lawson's culpability or dangerousness to the community (explaining that certain of the guns were family heirlooms, that Mr. Lawson hadn't fired the guns, that the .22 caliber rifle was non-functioning and that Mr. Lawson had given the firearms to his mother on several occasions). The court found that such arguments did not justify a variance

from the sentencing range. The court noted Mr. Lawson's criminal history, <u>see</u> § 3553(a)(1), the ongoing nature of his offense, <u>see</u> § 3553(a)(1),(a)(2)(A), Mr. Lawson's threats after the police seized his guns, <u>see</u> § 3553(a)(2)(A), and that Mr. Lawson posed a danger to the public, <u>see</u> § 3553(a)(2)(C). After considering the relevant statutory factors, the court sentenced Mr. Lawson to 46 months' imprisonment - within, and at the low end of, the guideline range.

It was within the range of professionally competent assistance for Mr. Truitt to refrain from raising or investigating the additional facts or evidence that Mr. Lawson says should have been addressed. Today's arguments are weak, and Mr. Truitt instead raised issues that had a greater possibility of success. Courts generally decline to second guess attorneys' strategic choices. <u>See</u> <u>United States v. Pergler</u>, 233 F.3d 1005, 1009 (7th Cir. 2000) ("When reviewing ineffective assistance of counsel claims, we presume that the attorneys made reasonable judgments and decline to second guess strategic choices."). Attorneys may have a "tactical reason not to make weak arguments . . . [which] may distract the court from the strong arguments and as a result make it less likely to rule in the defendant's favor." <u>See</u> <u>United States v. Rezin</u>, 322 F.3d 443, 446 (7th Cir. 2003). Because the record contains no reason to think the arguments asserted by Mr. Lawson would have provided a sentence below the guideline range, Mr. Lawson's claim cannot succeed on this ground.

Mr. Lawson says Mr. Truitt was deficient for failing to assert violations of his Fourth Amendment rights. In a similar context, the court of appeals

explained what evidence needs to be submitted to support a § 2255 motion. In Galbraith v. United States, 313 F.3d at 1009-1010, the defendant argued that his guilty plea was unknowing, unintelligent, and the product of ineffective assistance of counsel. He said his trial counsel failed to make clear to him that his unconditional plea forever waived his chance to challenge the denial of his motion to suppress. Id. at 1008. The defendant maintained that his counsel's failure to advise him effectively resulted in a guilty plea that he would not have entered otherwise. Id. The court of appeals noted that the "evidence usually employed in such cases begins with sworn affidavits attesting to the petitioner's allegations." Id. (citing Duarte v. United States, 81 F.3d 75, 76 (7th Cir. 1996)). Because Mr. Galbraith presented no affidavit from himself or his trial counsel supporting his version of his attorney's conduct, nor any other available, probative evidence that would effectively support his claim, he could not meet the threshold requirement for securing an evidentiary hearing and his claim was denied. Id.

To decide whether Mr. Truitt's assistance was deficient for failing to raise alleged violations of Mr. Lawson's Fourth Amendment rights, the court must engage in a factual inquiry about what Mr. Lawson told Mr. Truitt, how Mr. Truitt responded, and if applicable, the reasons for Mr. Truitt's advice not to file a motion to suppress or enter into a conditional guilty plea. Mr. Lawson sets forth several issues in his § 2255 motion that he alleges should have been raised in a motion to suppress: whether the officers were informed that Mr.

Lawson had a gun before they stopped and searched his vehicle, whether Mr. Belinski had authority to allow the police into Mr. Lawson's home during the first search, and whether the second search of Mr. Lawson's home was beyond the scope of the warrant. The success of a motion to suppress on these grounds is doubtful,[4] but needn't be resolved because Mr. Lawson presented no affidavit or any other probative evidence effectively supporting such claims. Additionally, although Mr. Lawson states that he informed Mr. Truitt of such facts, he doesn't provide any details of how Mr. Truitt responded or the effect these discussions had on Mr. Lawson's decision to plead guilty. The record doesn't contain specifics needed to decide whether Mr. Truitt's representation was deficient or caused Mr. Lawson to be prejudiced.

The lack of probative evidence in the record requires denial of Mr. Lawson's claim for ineffective assistance of counsel.

CONCLUSION

For the reasons stated above, the court DENIES Mr. Lawson's § 2255 petition.

SO ORDERED.

ENTERED _____ August 29, 2008 _____

---

[4]During a review of an order granting the government's motion for pretrial detention, the court heard evidence from the government providing justification for the stop and searches.

_____ /s/ Robert L. Miller, Jr. _____
Chief  Judge
United States District Court